## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **3:21-CR-143** |
| | : | |
| **v.** | : | **(Judge Mannion)** |
| | : | |
| **JEREMY EDWARD JOHNSON** | : | **(Electronically Filed)** |

### DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Jeremy Edward Johnson ("Mr. Johnson"), by and through his counsel hereby submits this sentencing memorandum in anticipation of sentencing before this Court on January 4, 2023.

### Procedural History & Applicable Sentencing Ranges

Mr. Johnson appears for sentencing following a jury trial and being convicted of Count 1, Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances Resulting in Death, in violation of 21 U.S.C. § 846; and Count 2, Distribution and Possession with Intent to Distribute a Controlled Substance (and Aiding and Abetting) Resulting in Death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2.  (Doc. 154).

On May 26, 2021, the Government filed a document pursuant to 21 U.S.C. § 851(a), (Doc. 10), seeking to increase the mandatory minimum punishment Mr. Johnson would be subjected to if convicted; however, Undersigned Counsel was notified that the Government intends to withdraw the § 851 enhancement prior to

sentencing.  Therefore, the statutory minimum term of imprisonment Mr. Johnson is subject to is 20 years.  (See PSR, Doc. 191 at ¶ 76).

The Presentence Report ("PSR") computes Mr. Johnson's total offense level as a **38**.  (Doc. 191 at ¶ 48).  The PSR calculates Mr. Johnson's criminal history category as a **VI**.  Id. at ¶ 61.  The PSR indicates that Mr. Johnson's guideline imprisonment range is **360 months to life**.  Id. at ¶ 77.

First, Mr. Johnson objects to paragraph 43 of the PSR because Mr. Johnson believes he is entitled to a mitigating role reduction pursuant to USSG § 3B1.2. Specifically, Mr. Johnson's position is that he is entitled to a 4-level reduction as a minimal participant, or in the alternative a 3-level or 2-level reduction pursuant to USSG § 3B1.2.  If provided a 4-level reduction pursuant to USSG § 3B1.2, Mr. Johnson's total offense level would be a **34**, which would produce a guideline sentencing range of **262 – 327 months**.  Lastly, Mr. Johnson believes there are relevant factors and circumstances to justify a variance down to the applicable mandatory minimum of **240 months**.

### Mitigating Role Reduction

Mr. Johnson's position is that he is entitled to a 4-level minimal role reduction, pursuant to USSG § 3B1.2.  USSG § 3B1.2(a) grants a 4-level role reduction "[i]f the defendant was a minimal participant in any criminal activity." Application Note 3(A) of USSG § 3B1.2 states "a defendant who is convicted of a

drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs . . . may receive an adjustment under this guideline." USSG § 3B1.2 also establishes 3-level and 2-level mitigating role reductions for individuals less culpable than the average participant in the criminal offense but not necessarily to the point of a "minimal participant".

In determining whether a reduction under USSG § 3B1.2 is warranted, the Third Circuit "has instructed district courts to consider 'such factors as the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise.'" United States v. Carrasco-Deleon, 781 Fed. Appx. 94, 96 (3d Cir. 2019) (citing United States v. Self, 681 F.3d 190, 201 (3d Cir. 2012)). The determination of whether a mitigating role reduction applies "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." USSG § 3B1.2, Commentary, Application Note (C).

Pursuant to the testimony and evidence at trial, Mr. Johnson was substantially less culpable than his codefendant, Susan Nickas. The testimony and evidence produced at trial was clear that Ms. Nickas was running a for-profit drug distribution operation out of her residence. Several neighbors of Ms. Nickas testified as to the constant and frequent alleged drug activity at the residence of

Ms. Nickas.  Furthermore, Ms. Nickas was operating her drug trafficking operation regardless of the inclusion or exclusion of Mr. Johnson.  Ms. Nickas had drug suppliers in New Jersey and Ms. Nickas had drug customers in Pennsylvania.  Mr. Johnson and his friends were drug customers of Ms. Nickas.  The PSR indicates that Kaleigh Watson stated to law enforcement that "'Sue' was [Mr. Johnson's] heroin supplier and that whenever Joshua Kiernan bought drugs from [Mr. Johnson, Mr. Johnson] obtained the drugs from 'Sue'".  (Doc. 191 at ¶ 14).  The fact that Kaleigh Watson and Joshua Kiernan knew the drugs were ultimately coming from "Sue" demonstrates the Mr. Johnson played a minor role in this drug conspiracy.  If Mr. Johnson was a typical for-profit drug dealer, he would not openly share his supplier with Ms. Watson and Mr. Kiernan.

Mr. Johnson was suffering through severe drug addiction, and he acted as a middleman for his friends solely to support his own drug habit.  Mr. Johnson barely had any money, and he was not a for-profit drug dealer that was spreading massive amounts of drugs through the community.  The Probation Officer agrees in the First Addendum to the PSR that Mr. Johnson "made little to no money selling drugs to his friends".  (Doc. 192).

Arguably, Mr. Johnson's role in the offense was equal to or even less significant than the role of Kaleigh Watson.  The United States Attorney's Office did not even choose to pursue charges against Ms. Watson; however, pursuant to

her own testimony, she was a crucial link in obtaining the drugs that killed Joshua Kiernan.  Ms. Watson was persistent and determined in her quest to obtain drugs for herself and Joshua Kiernan.  Ms. Watson initiated and organized the logistics of seeking and delivering drugs to Joshua Kiernan.  Ms. Watson was a necessary factor involved in the facilitation of the alleged drug transaction(s) that led to the death of Joshua Kiernan.

The testimony and evidence produced dictated that Mr. Johnson at most was an intermediary transporter of the drugs in issue.  Ms. Nickas was clearly closer to the original source of the drugs than Mr. Johnson; and Ms. Watson was the individual that coordinated the purchase and personally delivered drugs to Joshua Kiernan the day prior to his death.

Mr. Johnson was caught in the middle of both his drug addiction and the alleged drug transaction that led to the death of Joshua Kiernan.  Mr. Johnson's role was minimal compared to the role of other individuals involved.

Mr. Johnson respectfully requests that a 4-level mitigating role reduction be applied in this case.  In the alternative, Mr. Johnson requests the Court apply either a 3-level or 2-level mitigating role reduction.

## Sentencing Purposes and Factors

Under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 246 (2005).

The primary directive in 18 U.S.C. § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."  18 U.S.C. § 3553(a)(2) states that such purposes are:

> (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (b) to afford adequate deterrence to criminal conduct;
> (c) to protect the public from further crimes of the defendant; and
> (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 18 U.S.C. § 3553(a) further directs sentencing courts to consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1);
> (2) the kinds of sentence available, 18 U.S.C. § 3553(a)(3);
> (3) any pertinent policy statement issued by the Sentencing Commission, 18 U.S.C. § 3553(a)(5);
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, 18 U.S.C. § 3553(a)(6); and

6

(5) the need to provide restitution to any victims of the offense, 18 U.S.C. § 3553(a)(7).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is <u>not</u> an appropriate means of promoting correction and rehabilitation." (Emphasis added).

Under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

<u>**Application of the Statutory Sentencing Factors
to the Facts of this Case**</u>

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1.   **The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

   (A)   **Nature and Circumstances of the Offense**

   Mr. Johnson was convicted at trial for his involvement in the distribution of controlled substances that led to the death of Joshua Kiernan.  The offense conduct is described in paragraphs 9 – 33 of the PSR.  (Doc. 191).   The fact that Mr. Johnson exercised his constitutional right to a trial as opposed to potentially pursuing a plea agreement should have no impact on the bearing of the sentence he receives. See United States v. Derrick, 519 F.2d 1, 3 (6th Cir. 1975) ("Each case requires individualized sentencing procedures; however, whether a defendant exercises his constitutional right to trial by jury to determine guilt or innocence must have no bearing on the sentence.") (quoting United States v. Marzette, 485 F.2d 207 (8th Cir. 1973)); See also United States v. Harris, 635 F.2d 526, 529 (6th Cir. 1980) ("The trial court must not penalize the defendant for exercising his constitutional right to plead not guilty and go to trial; whether or not the defendant exercises his right to trial must have no bearing on the sentence he receives."); Baker v. United States, 412 F.2d 1069 (5th Cir. 1969).

   The evidence and testimony produced at trial established that Mr. Johnson was involved in this case due to his severe drug addiction.  Mr. Johnson was involved in transferring drugs to his friends to support his own drug addiction.

### (B)   History and Characteristics of the Defendant

Mr. Johnson grew up in a supportive and loving household; however, Mr. Johnson began suffering with drug addiction as a teenager.  Mr. Johnson's drug addiction has caused many issues in his life including his involvement in prior criminal cases as well as this current criminal case.  The Probation Officer states in the PSR that "[a]lmost all of the defendant's arrests and supervision violations are related to his drug use."  (Doc. 191 at ¶ 70).   Both of Mr. Johnson's parents and his older brother all have successful careers and are law abiding citizens.  The fact that Mr. Johnson has strayed from the successful paths of his family members is indicative that Mr. Johnson's drug addiction is the root cause of Mr. Johnson's criminal activity.  The fact that Mr. Johnson has positive and supportive family members in his life also indicates that if Mr. Johnson can overcome his drug addiction while incarcerated, Mr. Johnson will have proper influences in his daily life to turn a page and not recidivate.

Mr. Johnson received his GED in 2007 and he completed a program at Job Corp in 2008 with vocational training in carpentry.  Mr. Johnson did maintain employment in retail clothing sales, and he also worked for a log-home builder and a commercial flooring installer.  Mr. Johnson enjoys working with his hands doing construction and working on vehicles.  Mr. Johnson is highly motivated to continue to work in construction or on vehicles.

Mr. Johnson also received eight (8) character letters written on his behalf which are attached collectively as "**Exhibit A**".

**2.    The Need for the Sentence Imposed to Promote Certain Statutory Objectives:**

### (A) To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

Mr. Johnson faces 20 years to life in federal prison due to his actions which certainly provides just punishment for the offense, reflects the seriousness of the offense, and promotes respect for the law.

### (B) To Afford Adequate Deterrence to Criminal Conduct

The example of a drug addict finding themselves against the full weight of the federal government and having a serious sentencing exposure should sufficiently deter most individuals from committing such a crime.

### (C) To Protect the Public from Further Crimes of the Defendant

The PSR indicates that the Court must impose a term of supervised release of at least three (3) years on each count.  (Doc. 191 at ¶ 79).  While on federal supervision the United States Probation Office would be able to monitor Mr. Johnson's conduct to protect the public from any further criminal activity.

**(D) To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

A sentence of 240 months of incarceration would certainly adequately afford Mr. Johnson with educational or vocational training, medical care, and correctional treatment in the most effective manner.  Mr. Johnson does specifically request the Court recommend him for the RDAP program and any other available correctional programs.

**3.     The Kinds of Sentences Available**

**(A) The Sentencing Range Established by the Sentencing Commission**

The Defendant was convicted of Class A felonies that require mandatory terms of imprisonment.  Mr. Johnson is subject to a term of imprisonment of 20 years to life.  (Doc. 191 at ¶ 76).

**4.     The Need to Avoid Unwarranted Disparities**

Sentencing Mr. Johnson above the mandatory minimum of 240 months would create an unwarranted sentencing disparity regarding the involvement and actions of Mr. Johnson verses Kaleigh Watson.   While the federal government did not pursue charges against Kaleigh Watson, Ms. Watson was charged in Pennsylvania state court regarding her involvement in the distribution of drugs that resulted in the death of Joshua Kiernan.  Ms. Watson testified at Mr. Johnson's

11

federal trial detailing her persistent and regular involvement in obtaining drugs and delivering them to Joshua Kiernan.  Ms. Watson also emphatically testified that no agreement existed between her and the government, and Ms. Watson testified that she did not expect to receive any benefit at sentencing in her state case for her testimony at Mr. Johnson's trial.  Ms. Watson entered a plea and was sentenced to a probationary sentence in state court for her involvement in the distribution of drugs that resulted in the death of Joshua Kiernan. (Kaleigh Watson's Pennsylvania docket sheet attached as "**Exhibit B**").

While Mr. Johnson fully acknowledges that Ms. Watson was not federally charged, and she was subjected to Pennsylvania state law and sentencing guidelines; it is still a fundamental pilar of both state and federal court systems to adequately, fairly, and consistently sentence individuals who engage in similar criminal activity.  Mr. Johnson accepts that federal court sentences are typically higher than state court sentences; however, there is an enormous disparity when Mr. Johnson is facing 20 years to life in prison verses Ms. Watson receiving probation for essentially the same involvement in the distribution of drugs that led to the death of Joshua Kiernan.

## 5.    The Need to Provide Restitution to Any Victims of the Offense

The PSR indicates that no claim for restitution has been received.  (Doc. 191 at ¶ 89).

## <u>Conclusion</u>

Mr. Johnson requests a sentence of 240 months.  This sentence is the most judicially efficient and effective resolution to this case in consideration of all the factors involved.

Respectfully submitted,

Date:  December 29, 2022          /s/ Christopher Opiel
**Christopher Opiel, Esq.**
**CJA Appointed Counsel**
**Attorney ID# PA318776**
Opiel Law
88 North Franklin Street
Wilkes-Barre, Pennsylvania 18701
(570) 762-9992 (Office)
(570) 417-1436 (Cell)
(570) 825-6675 (Fax)
Email: cropiel@opiellaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher Opiel, CJA appointed counsel, do hereby certify that this document, the foregoing **Defendant's Sentencing Memorandum**, filed electronically through the ECF system will be sent to the registered Participants as identified on the Notice of Electronic Filing, including the following:

Michelle L. Olshefski
Assistant United States Attorney

Mark A. Campetti
United States Probation Officer

Date:  December 29, 2022          /s/ Christopher Opiel
                                  **Christopher Opiel, Esq.**

14

# **EXHIBIT A**

**Eve Ammons-Johnson**
**322 Fall Creek Terrace**
**Stroudsburg, PA 18360**

12/16/2022

To whom it may concern:

    I am the mother of Jeremy Edward Johnson, and as such I have known him longer than anyone except the Lord.  I am writing regarding his upcoming sentencing, to provide a more in-depth picture of him which may not have been revealed during the trial.

    My son Jeremy is 31 years old, born in Brooklyn, NY and moved to Pennsylvania just a few days after his 9th birthday in 2000.  He is our youngest son, preceded 4 ½ years by his brother Jayson.  Jeremy is outgoing, friendly and generous.  As children, he and his brother routinely invited friends over to play games, have dinner and enjoy holidays. They both gave away toys and books that they no longer needed, and got along well with family, neighbors and friends.  Jeremy always looks forward to events with both sides of our extended family.

    Jeremy had some struggles in school due to issues with keeping attention, but he always maintained his grade level in school through special focused education. Jeremy is very well read and enjoys writing, drawing, brain teaser puzzles, board and video games, Japanese anime and music. He earned his Secondary School Diploma at 16 years old but could not receive it until he was 18 due to state rules. Jeremy has worked in carpentry and home renovation (he has a certificate from Job Corps) with his father and others.  He has vocational interests in auto repair and customization, barbering, writing and art. While he was working he contributed to the household financially.. He has taken to physical fitness, meditating and praying for peace in his life.

    I understand that  the jury found Jeremy guilty as charged and it is difficult. He has had some struggles, many of which likely have derived from his adolescent traumas,  and falling into addiction to deal with the pain of such. Our family and his close friends support his ability to get through this  difficult time in his life. I have encouraged him to seek counseling which he said he would consider. I ask that the court take Jeremy's qualities into consideration, as I am hoping that he is able to positively contribute to society, some day through his gifts and love of people.

    I thank you for the time you spent reading this letter. I can be reached to validate the contents via phone or email, or any other way you deem suitable.

Very Sincerely,

Eve Ammons-Johnson
570-619-5258
ms.eve.aj@gmail.com

December 14, 2022

To whom it may concern:

My name is Dawn Ammons, I am Jeremy Johnson's maternal aunt. I have known him all his life, he is my middle sister's youngest son. I am writing to describe his personality and examples of his best qualities.

Jeremy has always been a well spoken,polite person. He is very smart and wants to further his education. Jeremy is an avid reader, and has always been very inquisitive, and was reading on a college level in Junior high school.  I have had many interesting conversations with him about culture, entertainment, politics and spirituality. I remember when Jeremy worked as a sales person for clothing and shoe stores. He enjoys talking with people, assisting others, suggesting items for purchase, and showing friendliness. He likes to keep up his appearance and encourage others to do the same. I know that he works on cars and wants to pursue this as a career,  along with other interests.

He always offers to help people, especially his friends and family. He is very close with  our family. He was especially close with his grandmother whom he, and all the other grandchildren called "Nana",  who sadly passed away in 2013. It was hard for us all, but he and the rest of us remember her encouraging us to pray and to press on through tough times.

I realize that he received a guilty verdict and it is a hard road for him.  I believe that  he is resilient, as he has always tried to overcome life's challenges, sometimes on his own, although family would always be willing to advise and help him when asked. His mom and dad demonstrated  strong work and education ethics which he can re-embrace,  given the chance.

I ask that you please keep  these attributes in mind when considering Jeremy's sentence.  I believe that Jeremy can return to the community as an asset. Thank you for your time and concern. I can be reached as listed below, to confirm.

Respectfully submitted,

Dawn M. Ammons
1199 Dean St. 1R
Brooklyn, NY 11215
347-421-9128

42-35 159th St. 4A Flushing, NY 11358 |1(347) 500-3167 | j.ammons1014@gmail.com

**To whom it may concern,**

My name is Joshua Ammons and I am writing this letter on behalf of my beloved (maternal) cousin Jeremy Johnson.  As I am only 3 months older than Jeremy, I have known him my entire life.  In that time I have fond memories of my childhood with Jeremy and can say, without hesitation, that Jeremy is one of the kindest men I have ever had the pleasure to be around.

Upon hearing that Jeremy's fate is to be decided by the court, I was compelled to share my feelings about my cousin and how much he has to offer his family and the world, if the court would exert such leniency. Jeremy has always been a bright spot in our family; a caring word, a much-needed laugh, a brotherly embrace, are all ways Jeremy positively impacts all of us. In our small family, there are only five (5) of us cousins: Nicole the eldest, Jeremy and his big brother Jayson, myself and my younger brother Solomon.  As the small lot of us don't have any children of our own, we are quite literally the "next generation" of our family.

Over the years, I have known Jeremy to be smart and industrious, a positive self-starter, and a swift learner.  From helping to construct log cabins to restoring vehicles from the ground up, Jeremy possesses a more than capable mind and a talented set of hands. If given the chance, Jeremy's contribution to society can and will be exceptional and profound.

I humbly thank the court for the time taken to read my letter, and even more humbly ask for the court to grant my much-loved cousin the ability to better the world through his freedom. With your help and kindness, Jeremy, an essential part of our family's small brood, can once again have a chance to brighten not only our world, but that of everyone who ever has the pleasure to meet him.

If ever needed to be contacted, I am more than happy to clarify and reaffirm all I've stated in this correspondence.


My deepest gratitude,

Joshua L Ammons

Nicole Buchanan
1199 Dean Street
Apartment #2R
Brooklyn, NY 11216
(631) 703-4261
nicolebuchanan00@gmail.com

To Whom It May Concern,


My name is Nicole Buchanan and I am Jeremy Johnson's first cousin. I have known Jeremy his entire life. We were raised more like siblings than cousins and our relationship has always been very close.

I am writing today to provide deeper insight as to who Jeremy is as a person. I respect the ruling of the court and the fact that he has been found guilty of a crime. I also know that Jeremy is a kind, compassionate and very intelligent human being. He has a natural aptitude for mechanical engineering and has expressed much action and interest in returning to school for automotive repair. He is extremely generous with his time and his resources. He is always willing to go the extra mile to help others and be a listening ear. Jeremy is also very family oriented and has always taken an interest in spending time with loved ones near and far. Jeremy has been like this since he was a child and watching him grow into a man who is still kind, compassionate, family oriented and generous has been a joy to witness. During his time as a retail employee he was one of the highest rated employees in regards to customer satisfaction, friendliness and helpfulness. He works very well with others and is a team player.  Admittedly, he does struggle with his own personal demons but I do believe he can be a productive member of society if given the opportunity to continue his automotive studies and reconnect with his family.

I would like to thank the court for taking the time to read this letter and I humbly ask that Jeremy be given a chance to come home and reunite with our family. I can confirm that everything in this letter is the truth and I am available to verify everything that has been stated.

Sincerely,

Nicole Buchanan

12/13/22

Johnny J. Johnson
322 Fall Creek Terrace
Stroudsburg, PA 18360
johnjohn@ptd.net

To Whom It May Concern:

I am Jeremy Johnson's father, and of course I've known him all his life, which is almost 32 years.I understand that Jeremy was found guilty at trial of a serious crime, and I hope to provide some details about him as an individual.

While my son has had his struggles, as many young people do, he has been helpful to my wife and me around the house, as we are getting older. He helped with some heavy chores, splitting logs, and shoveling snow.   Jeremy does know carpentry and some auto maintenance, and he contributed his share to the household when he had jobs at the Crossings shopping center. He reads and writes well, and has a GED. He could do even better to get more counseling for his problems. I have seen him try to help some of his friends with advice, food and even some of his own clothing when they were in need.

I want to thank the court for the chance to provide this information, and that it may be helpful in giving Jeremy a reasonable sentence by the court, and a chance to be productive in the future.  I am available to confirm the facts in this letter as necessary.

Sincerely,

Johnny Johnson

**Holly Ammons**
**206 Washington Park #3**
**Brooklyn, NY, 11205-4088**
**347-500-3166**
holly.ammons147@gmail.com                                    **December 13, 2022**

**RE:** SUPPORT FOR  JEREMY JOHNSON


To Whomsoever It May Concern,

My name is Holly Ammons and I am Jeremy Johnson's maternal aunt. I have known Jeremy his entire 31 years. He and my oldest child Joshua are only one year apart in age. Jeremy grew up around my children and I observed a respectful, kind and intelligent child.

As Jeremy and my children grew older and I made New York my home, they began to spend less time together. However, on those occasions, I saw a child who was still respectful, kind and intelligent grow into a humble, helpful and grateful man. He always offered to help me out in many ways when he visited, from taking out the garbage to helping me with my groceries. Jeremy, even when annoyed or angry never displayed a violent nature, so when I heard he was facing prison time for such crime, I felt compelled to inform you of the person I knew and know.

Jeremy can be redeemed from the consequences of his decision making and, if anybody does, he deserves an opportunity to redeem himself for any harm he has caused. I pray that you have been able to see that Jeremy is worthy of the chance to prove that he is a whole lot more than his worst decision.

So in closing, I ask that in consideration of the sentence to be imposed, that you consider a person with such a personality and spirit as Jeremy as worthy of redemption. I thank you for your time and consideration of this letter and can be reached at the above listed number and email if you have any questions or concerns about the content of my letter.


Thankfully,

*Holly Ammons*

**Holly Ammons**

Mariah Visan

152 Sunlight Dr, Henryville PA, 18332 / 5501 Montgomery Hwy, Tuscaloosa AL, 53405

570-620-6132

Mymypumpkinpiee@gmail.com

Recommending Leniency for Sentencing of Jeremy E Johnson

To whomever it may concern,

My name is Mariah Visan, I am writing this letter on behalf of Jeremy E Johnson in regard to his character. I provide this reference in full knowledge of Jeremy's charges, and would like to offer the court a better, more accurate understanding of the type of human I personally know him to be. I have known Jeremy for several years, I met him through my oldest sister Sarah Anne Costello/Colon (Deceased as of May 29, 2019). Sarah and Jeremy were childhood best friends and I became closer with him, when they reconnected in 2018. Sarah had described him as someone she loved, respected, and could fully trust with her life. From the moment we spoke, we connected and I instantly knew what she meant. He soon became mine, as well as my husband's, closest and dearest friend, and an important part of our family.

Jeremy is a gentle old soul, he treats people with kindness and utmost respect, even when they don't quite deserve it. He is a peaceful man who tries his best to maintain that peace and stay out of trouble. He works hard to keep his own spiritual and mental peace and reflects on his life and choices often. I know from previous experience/knowledge that his caring nature and kindness has led him onto a troubled path, unrelated to his own actions and beliefs. His family and his friendships are of extreme importance to him, he would go to great lengths to care for/ protect them, and would never endanger them. I struggle to believe he would even harm a fly as he has always shown his kindness and restraint even to acquaintances/strangers. Jeremy has become close with my entire family and has been my support system and my rock through many hard times. Sarah Anne passed from a Fentanyl overdose in May of 2019, and it was quite hard on both of us. We sat together and cried for hours, leaning on one another to get through such a painful and emotional time. It affected us both deeply and caused our outlook on life to change drastically, life was much more precious and short. My husband and I had a falling out soon after her death and he was there for us both at that time. He kept us calm, saw both sides of our story, and found a way to keep us on solid ground more than once. When we were struggling financially he was the one we could count on and he helped us even when he was struggling himself. When I had my daughter in August of 2020, he was right there by my side, cheering me on and supporting me when I felt there was too much pressure on me and entirely too much going on in life. Whenever I have needed him Jeremy was there, whether it's

emotionally, financially, spiritually, or otherwise. He proves time and time again that he will never waiver especially not when it comes to the people he cares about but also in general. Jeremy is one of the most dependable, hardworking, and genuine human beings I have ever known and has truly been a blessing to many.

It is my sincere hope that the court takes this letter into consideration at the time of his sentencing and shows him leniency. Despite the case against him, I believe Jeremy Johnson to be an honorable individual, a valuable member of the community, and a genuinely good human being. One who cares deeply and wholeheartedly about all of those around him, and attempts to make the world a better place regardless of the hands he has been continually dealt in life. I know in my heart that he will continue to be this way and better himself everyday as his life continues. I'm positive that you won't ever see him in predicaments like this again in the future, because it is truly not of his nature. I am available to confirm the statements in this letter personally, if necessary. Thank you for your time.

Sincerely,
Mariah Visan

16 December 2022

Very Reverend Bryan D. Patterson
Rector of Saint James Cathedral-Basilica
250 Cathedral Place
646.784.7970
rector@brooklyncathedral.net

To Whom It May Concern,

I am the Rector of Saint James Cathedral-Basilica in the Diocese of Brooklyn and the Pastor of Saint James Parish. I am writing this character letter for Jeremy Johnson, my cousin, whose mother is the daughter of my mother's older sister. I have known Jeremy for his whole life, thirty-one years.

I am writing this letter at the request of Jeremy's mother, Eve Johnson for character reference. Jeremy was born into a stable family where his well-educated mother and father maintain good employment and steady income. They were able to purchase a home in family-friendly community Pennsylvania after living and growing up in Brooklyn.

I never noticed anything unusual about Jeremy's behavior or demeanor. It is only in his later teens that I began to hear of some delinquency and personal challenges. I thought his family was handling things well, as Jeremy was always sociable, kind and respected by his friends. In fact, he was known to be particularly devoted to his friends, many of whom found him an inspiration. This desire to be helpful but without due discrimination may be the reason he later developed serious problems with the law, as he did not use good judgement when selecting friends or respect boundaries that would have protected himself from illicit activities and prosecution.

As a minister and public servant, I respect the law and the verdict of guilty that he has received. I thank the court for its deliberations and defending the rights and responsibilities of our society that we as citizens are entrusted to uphold. With this in mind, I ask that the court consider that my cousin still has most of his life ahead of him and still could make a positive contribution to society, particularly because that is his apiration. Although he has been found guilty, I do not believe he intended to commit the crime of which he is accused. Thank you for reviewing my letter. I am available to confirm any aspect of what I have written.

Sincerely,

Very Reverend Bryan D. Patterson
Rector

# **EXHIBIT B**

# COURT OF COMMON PLEAS OF MONROE COUNTY

## DOCKET



**Docket Number: CP-45-CR-0002075-2022**
# CRIMINAL DOCKET
**Court Case**

Commonwealth of Pennsylvania

v.

Kaleigh Ashley Watson

Page 1 of 6

## CASE INFORMATION

| | |
|---|---|
| Judge Assigned:  Mark, Jonathan | Date Filed:  08/25/2022          Initiation Date: 06/04/2021 |
| OTN:  R 143774-1          LOTN: | Originating Docket No:  MJ-43303-CR-0000232-2021 |
| Initial Issuing Authority:  Daniel Kresge | Final Issuing Authority:  Daniel Kresge |
| Arresting Agency:  Monroe County District Attorney's Office | Arresting Officer:  Lippincott, Kimberly |
| Complaint/Citation No.:  20201214M0717 | Incident Number:  20201214M0717 |
| Case Local Number Type(s) | Case Local Number(s) |

## RELATED CASES

| Related Docket No | Related Case Caption | Related Court | Association Reason |
|---|---|---|---|
| **Related Misc. Bail Cases** | | | |
| CP-45-MD-0000442-2021 | Comm. v. Watson, Kaleigh Ashley | CP-43-45-Crim | Same MDJ Case |

## STATUS INFORMATION

| Case Status: | Closed | Status Date | Processing Status | Complaint Date: | 06/04/2021 |
|---|---|---|---|---|---|
| | | 11/18/2022 | Sentenced/Penalty Imposed | | |
| | | 11/18/2022 | Awaiting Sentencing | | |
| | | 10/17/2022 | Awaiting Trial Scheduling | | |
| | | 10/13/2022 | Awaiting Pre-Trial Conference | | |
| | | 08/25/2022 | Awaiting Formal Arraignment | | |
| | | 08/25/2022 | Awaiting Filing of Information | | |

## CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Formal Arraignment | 10/19/2022 | 8:30 am | Courtroom 1 | Judge Jonathan Mark | Cancelled |
| Guilty Plea Hearing | 11/16/2022 | 1:30 pm | Courtroom 3 | Judge Jonathan Mark | Scheduled |
| Pre-Trial Conference | 12/21/2022 | 10:30 am | Courtroom 1 | Judge Jonathan Mark | Cancelled |

## DEFENDANT INFORMATION

| Date Of Birth: | 12/12/1990 | City/State/Zip:  Stroudsburg, PA  18360 |
|---|---|---|

## CASE PARTICIPANTS

| Participant Type | Name |
|---|---|
| Defendant | Watson, Kaleigh Ashley |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF MONROE COUNTY

## DOCKET



**Docket Number: CP-45-CR-0002075-2022**
# CRIMINAL DOCKET
**Court Case**

Commonwealth of Pennsylvania

v.

Kaleigh Ashley Watson

Page 2 of 6

## BAIL INFORMATION

**Watson, Kaleigh Ashley**                                        **Nebbia Status: None**

| Bail Action | Date | Bail Type | Percentage | Amount | | |
|---|---|---|---|---|---|---|
| | | | | | Bail Posting Status | Posting Date |
| Set | 06/04/2021 | Unsecured | | $30,000.00 | | |
| Change Non-Monetary Conditions | 08/27/2021 | Unsecured | | $30,000.00 | | |

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | F3 | 18 § 4304 §§ A1 | Endangering Welfare of Children - Parent/Guardian/Other Commits Offense | 12/10/2020 | R 143774-1 |
| 2 | 2 | F | 35 § 780-113 §§ A30 | Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | 12/10/2020 | R 143774-1 |
| 3 | 3 | F | 18 § 903 | Conspiracy - Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | 12/10/2020 | R 143774-1 |
| 4 | 4 | F3 | 18 § 7512 §§ A | Criminal Use Of Communication Facility | 12/10/2020 | R 143774-1 |
| 5 | 5 | M | 35 § 780-113 §§ A16 | Int Poss Contr Subst By Per Not Reg | 12/10/2020 | R 143774-1 |
| 6 | 6 | M | 35 § 780-113 §§ A19 | Purc/Rec Of Cont Substby Unauth Per | 12/10/2020 | R 143774-1 |

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | Disposition Date | Final Disposition | |
|---|---|---|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | | Start Date |
| Sentence Conditions | | | |

| **Waived for Court (Lower Court)** | Defendant Was Present | | |
|---|---|---|---|
| Lower Court Disposition | 08/23/2022 | Not Final | |
| 1 / Endangering Welfare of Children - Parent/Guardian/Other Commits Offense | Waived for Court (Lower Court) | F3 | 18 § 4304 §§ A1 |
| 2 / Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Waived for Court (Lower Court) | F | 35 § 780-113 §§ A30 |
| 3 / Conspiracy - Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Waived for Court (Lower Court) | F | 18 § 903 |
| 4 / Criminal Use Of Communication Facility | Waived for Court (Lower Court) | F3 | 18 § 7512 §§ A |
| 5 / Int Poss Contr Subst By Per Not Reg | Waived for Court (Lower Court) | M | 35 § 780-113 §§ A16 |
| **Proceed to Court** | Defendant Was Not Present | | |
| Information Filed | 08/31/2022 | Not Final | |
| 1 / Endangering Welfare of Children - Parent/Guardian/Other Commits Offense | Proceed to Court | F3 | 18 § 4304 §§ A1 |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF MONROE COUNTY

## DOCKET



**Docket Number: CP-45-CR-0002075-2022**
# CRIMINAL DOCKET
**Court Case**

Commonwealth of Pennsylvania

v.

Kaleigh Ashley Watson

Page 3 of 6

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | Disposition Date | Final Disposition | |
|---|---|---|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | | Start Date |
| Sentence Conditions | | | |
| 2 / Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Proceed to Court | F | 35 § 780-113 §§ A30 |
| 3 / Conspiracy - Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Proceed to Court | F | 18 § 903 |
| 4 / Criminal Use Of Communication Facility | Proceed to Court | F3 | 18 § 7512 §§ A |
| 5 / Int Poss Contr Subst By Per Not Reg | Proceed to Court | M | 35 § 780-113 §§ A16 |

**Guilty Plea**

| | | | |
|---|---|---|---|
| Guilty Plea Hearing | 11/18/2022 | Final Disposition | |
| 1 / Endangering Welfare of Children - Parent/Guardian/Other Commits Offense | Guilty Plea | F3 | 18 § 4304 §§ A1 |
| Mark, Jonathan | 11/18/2022 | | |
| Probation | Min of 7.00 Years | | |
| | Max of 7.00 Years | | |
| | Length of Term | | |
| 2 / Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Proceed to Court | F | 35 § 780-113 §§ A30 |
| Mark, Jonathan | 11/18/2022 | | |
| 3 / Conspiracy - Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Proceed to Court | F | 18 § 903 |
| Mark, Jonathan | 11/18/2022 | | |
| 4 / Criminal Use Of Communication Facility | Proceed to Court | F3 | 18 § 7512 §§ A |
| Mark, Jonathan | 11/18/2022 | | |
| 5 / Int Poss Contr Subst By Per Not Reg | Proceed to Court | M | 35 § 780-113 §§ A16 |
| Mark, Jonathan | 11/18/2022 | | |
| 6 / Purc/Rec Of Cont Substby Unauth Per | Guilty Plea | M | 35 § 780-113 §§ A19 |
| Mark, Jonathan | 11/18/2022 | | |
| Probation | Min of 3.00 Years | | |
| | Max of 3.00 Years | | |
| | Length of Term | | |

Printed: 12/28/2022

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF MONROE COUNTY

## DOCKET



**Docket Number: CP-45-CR-0002075-2022**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Kaleigh Ashley Watson

Page 4 of 6

| COMMONWEALTH INFORMATION | ATTORNEY INFORMATION |
|---|---|
| <u>Name:</u>   Andrew Jon Throckmorton<br>District Attorney | <u>Name:</u>   Brian Christopher Jordan<br>Private |
| <u>Supreme Court No:</u>   317830 | <u>Supreme Court No:</u>   207223 |
| <u>Phone Number(s):</u> | <u>Rep. Status:</u>   Active |
|    570-517-3978   (Phone) | <u>Phone Number(s):</u> |
| <u>Address:</u> |    570-421-5568   (Phone) |
|    701 Main St Ste 200<br>   Stroudsburg, PA  18360 | <u>Address:</u> |
| |    Cramer Swetz Mcmanus & Jordan P.c.<br>   711 Sarah St<br>   Stroudsburg, PA  18360 |
| <u>Name:</u>   Monroe County District Attorney's<br>Office<br>District Attorney | Representing: Watson, Kaleigh Ashley |
| <u>Supreme Court No:</u> | |
| <u>Phone Number(s):</u> | |
|    570-517-3052   (Phone) | |
| <u>Address:</u> | |
|    701 Main Street<br>   Suite 200<br>   Stroudsburg, PA  18360 | |

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| Service To | | Service By | |
| Issue Date | Service Type | Status Date | Service Status |
| 1 | 08/25/2022 | | Court of Common Pleas - Monroe County |
| Original Papers Received from Lower Court | | | |
| Throckmorton, Andrew Jon | | | |
| 08/25/2022 | eService | | Served |
| 1 | 08/31/2022 | | Christine, E. David |
| Information Filed | | | |
| Jordan, Brian Christopher | | | |
| 08/31/2022 | eService | | Served |
| Monroe County District Attorney's Office | | | |
| 08/31/2022 | eService | | Served |
| Monroe County Probation Department | | | |
| 08/31/2022 | eNotice | | Notified |
| Throckmorton, Andrew Jon | | | |
| 08/31/2022 | eService | | Served |

CPCMS 9082

Printed: 12/28/2022

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF MONROE COUNTY

## DOCKET



**Docket Number: CP-45-CR-0002075-2022**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Kaleigh Ashley Watson

Page 5 of 6

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| Service To | | Service By | |
| Issue Date | Service Type | Status Date | Service Status |
| 1 | 10/13/2022 | | Jordan, Brian Christopher |
| Waiver of Appearance at Arraignment | | | |
| Monroe County District Attorney's Office | | | |
| 10/13/2022 | eService | | Served |
| Monroe County Probation Department | | | |
| 10/13/2022 | eNotice | | Notified |
| Throckmorton, Andrew Jon | | | |
| 10/13/2022 | eNotice | | Notified |
| 3 | 10/17/2022 | 10/17/2022 | Mark, Jonathan |
| Order Scheduling Case for Final Call and Trial | | | |
| Jordan, Brian Christopher | | | |
| 10/17/2022 | eService | | Served |
| Monroe County Court Administration | | | |
| 10/17/2022 | Clerk of Court's Boxes | | |
| Monroe County District Attorney's Office | | | |
| 10/17/2022 | eService | | Served |
| Monroe County Probation Department | | | |
| 10/17/2022 | eNotice | | Notified |
| Throckmorton, Andrew Jon | | | |
| 10/17/2022 | eService | | Served |
| 1 | 11/18/2022 | | Mark, Jonathan |
| Guilty Plea | | | |
| Jordan, Brian Christopher | | | |
| 11/18/2022 | eService | | Served |
| Monroe County District Attorney's Office | | | |
| 11/18/2022 | eService | | Served |
| Monroe County Probation Department | | | |
| 11/18/2022 | eNotice | | Notified |
| Throckmorton, Andrew Jon | | | |
| 11/18/2022 | eService | | Served |
| 2 | 11/18/2022 | 11/16/2022 | Mark, Jonathan |
| Order - Sentence/Penalty Imposed | | | |
| Jordan, Brian Christopher | | | |
| 11/18/2022 | eService | | Served |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF MONROE COUNTY

## DOCKET



**Docket Number: CP-45-CR-0002075-2022**
# CRIMINAL DOCKET
**Court Case**

Commonwealth of Pennsylvania

v.

Kaleigh Ashley Watson

Page 6 of 6

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| Service To | | Service By | |
| Issue Date | Service Type | Status Date | Service Status |

| | | | |
|---|---|---|---|
| Monroe County Correctional Facility | | | |
| 11/18/2022 | Clerk of Court's Boxes | | |
| Monroe County Court Administration | | | |
| 11/18/2022 | Clerk of Court's Boxes | | |
| Monroe County District Attorney's Office | | | |
| 11/18/2022 | eService | | Served |
| Monroe County Probation Department | | | |
| 11/18/2022 | eNotice | | Notified |
| Monroe County Sheriff's Department | | | |
| 11/18/2022 | Clerk of Court's Boxes | | |
| Throckmorton, Andrew Jon | | | |
| 11/18/2022 | eService | | Served |

| | | | |
|---|---|---|---|
| 3 | 11/18/2022 | | Jordan, Brian Christopher |
| | | | Throckmorton, Andrew Jon |
| | | | Watson, Kaleigh Ashley |
| Written Guilty Plea and Colloquy | | | |
| Monroe County District Attorney's Office | | | |
| 11/18/2022 | eService | | Served |
| Monroe County Probation Department | | | |
| 11/18/2022 | eNotice | | Notified |

| | | | |
|---|---|---|---|
| 1 | 12/12/2022 | | Monroe County Probation Department |
| Guideline Sentence Form | | | |
| Jordan, Brian Christopher | | | |
| 12/13/2022 | eService | | Served |
| Monroe County District Attorney's Office | | | |
| 12/13/2022 | eService | | Served |
| Throckmorton, Andrew Jon | | | |
| 12/13/2022 | eService | | Served |

Printed: 12/28/2022

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.